875 F.2d 869
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard WALCZAK, Plaintiff-Appellant,
v.
CITY OF DETROIT, et al., Defendant-Appellee,
 No. 88-1338.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1989.
 
 Before WELLFORD and RALPH B. GUY, Jr., Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 The Detroit police department initiated an internal investigation of the complaint of Jerry Stiff, who was arrested for disorderly conduct and taken to the Second Precinct police station in May of 1979. Stiff alleged that during the early morning of May 14, someone at the Precinct assaulted him with a cattle prod, a blackjack, and fists. Stiff also alleged that a second person participated in the assault. Stiff described the accomplice as a white male dressed in civilian clothes with a light green hunting jacket, presumably a plain clothes officer. Stiff described his assailant as
 
 
 2
 A white male, 5' 10" to 5' 11", 190 to 200 lbs., stocky build, blondish, wearing a blue uniform with no stripes on sleeve, two holes on the shirt pocket where a name tag would have been, no holster, a black belt with keys stuck in the belt.
 
 
 3
 The description is not inconsistent with how a "doorman"[1] at that precinct might be dressed. Testimony in this case showed that everything on a uniform that could possibly be grabbed or used as a weapon should be taken off, including name tags, stripes, and holsters.
 
 
 4
 After appearing in Traffic Court at 6:00 a.m. on May 14, 1979, Stiff went to seek help for substance abuse on May 15, 1979, at Detroit Memorial Hospital, during the course of which he complained of chest burns from a cattle prod. He also complained of bruises all over his body.
 
 
 5
 Walczak had been a police officer for several years at the time of the episode in question at the Second Precinct jail. He sued the City of Detroit and its Chief of Police, Revel Brawner, based upon his arrest on a charge of felonious assault upon Jerry Stiff. He was acquitted after a trial on these criminal charges, and then sued under 42 U.S.C. Sec. 1983 for a claimed procedural and substantive due process violation based on his allegations that he was charged and arrested without probable cause.
 
 
 6
 After Walczak completed his proof, defendants moved for a directed verdict, taken under advisement by Judge Ralph Freeman. The motion was renewed at the conclusion of all the proof and, again, was taken under advisement. The jury returned a verdict of $1,200,000 against the City but also determined that Brawner was not liable. The district court, however, granted Detroit's motion for judgment notwithstanding the verdict. Plaintiff has appealed the setting aside of the verdict against the City.
 
 
 7
 Judge Freeman made the following findings in respect to defendant's j.n.o.v. motion:
 
 
 8
 On February 9, 1980, after media attention surrounding another cattle prod incident at the Second Precinct, Stiff submitted a complaint to the Detroit Police Department about his alleged cattle prod assault at the Second Precinct. He gave investigators the above physical description of his assailant and told them that the person who had fingerprinted him was the assailant. Sergeants Pearce and Hyman, officers in the Internal Affairs Section (IAS) of the Detroit Police Department, conducted the investigation.
 
 
 9
 Sergeant Pearce testified that he prepared and signed Plaintiff's Exhibit # 2, the investigator's report on Plaintiff Richard Walczak that named him as a Defendant in a potential state criminal case. He testified that Inspector Brooks, whose signature appeared on the exhibit, was the commanding officer of the IAS. Sergeant Pearce testified that the investigator's report was the "cumulative effort to investigate the citizen's complaint of police misconduct" that he presented to the Wayne County Prosecutor's Office for the possible recommendation for the issuance of an arrest warrant against the plaintiff. Sergeant Pearce on cross-examination testified that he was obligated to interview all witnesses, both favorable and unfavorable, regarding alleged criminal activity by Detroit police officers.
 
 
 10
 Sergeant Pearce testified that he attempted, individually or through associates, to interview all of the prisoners incarcerated at the Second Precinct on May 14, 1979 and all of the police officers on duty at that precinct on that date. Sergeant Pearce also testified that he interviewed the Plaintiff and that the Plaintiff did not deny working on May 14, 1979. The evidence at trial did not show conclusively one way or the other whether Plaintiff worked his assigned duties that night. The Plaintiff testified that he had no independent recollection of either working or not working that night. Investigators Pearce and Hyman interviewed complainant Stiff as well; Pearce testified that he talked with Stiff at least four times. The investigator's report contains the synopses of these interviews. With regard to the prisoner interviews, one prisoner related to the investigators that he saw Stiff that night in the detention cell and heard fighting noises; he further stated that Stiff told him the next day that he had been hit with a blackjack and burned with a cattle prod. Furthermore, he stated that Stiff showed him a burn mark. Another prisoner remembered seeing a tall, skinny, black male who complained of police brutality; he also saw bruises around the chest and back on the man. A third prisoner indicated that he heard profanity, a scream, and hitting and slapping between 2 a.m. and 4 a.m. and comments about being beaten because of race. (Footnotes omitted).
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 The police officers investigate and prepare a report that is compiled into the top half of Defendant's Exhibit # 100. This report is then submitted to the prosecutor's office. The prosecutor's office then reviews the report and decides whether to deny or recommend the issuing of an arrest warrant. If the prosecutor decides to recommend that a warrant be issued, he must sign the recommendation before the magistrate can issue it, unless someone files security for costs. Mich.Comp.Laws Ann. Sec. 764.1(1) (West 1982). Testimony at trial showed that on occasion the prosecutor may request additional information before deciding the request. Furthermore, Sergeants Pearce and Graves testified that the prosecutor's office does not rubber stamp the requests. In this case, Richard Padzieski, Deputy Chief, Screening and Trial Preparation, Wayne County Prosecutor's Office, issued a memorandum on March 14, 1980 to the Chief Assistant Prosecuting Attorney, Mr. Carnovale, in which he requested additional investigation from the police department.
 
 
 14
 Sergent Pearce testified that he prepared the investigator's report on or before March 12, 1980. This issue is contested. Plaintiff contends that Sergeant Pearce's credibility is in question and that the jury did not believe him.
 
 
 15
 On March 19, 1980, Judge Tennan of Detroit Recorder's Court issued an arrest warrant for Plaintiff. Plaintiff was arrested on the warrant and charged with the felonious assault of Jerry Stiff. Judge Evans of the Recorder's Court conducted a preliminary examination over the course of three days in April 1980 and bound Plaintiff over for trial. The parties have stipulated that Plaintiff was acquitted of the felonious assault charge on October 6, 1982.
 
 
 16
 The key factual points of contention between the parties are 1) whether the police investigators misrepresented the facts in the investigator's report and caused the plaintiff to be arrested without probable cause and 2) whether probable cause existed to issue the arrest warrant.
 
 The district court then concluded:
 
 17
 After examining the record presented in this trial in great detail, viewing the evidence in the light most favorable to Plaintiff, and without passing on the credibility of witnesses, the court can find no basis upon which a jury could have reasonably concluded that Sergeants Pearce and Hyman and Inspector Brooks misrepresented the investigation in the investigator's report. The evidence points so strongly in favor of the Defendant that the investigators did not misrepresent the results of their investigation and that they had probable cause to submit their report that the Defendant's judgment n.o.v. motion should be granted.
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 Defendant's Exhibit # 104, dated March 14, 1980, supports the argument that Sergeant Pearce submitted the investigator's report to the prosecutor by March 12, 1980. The exhibit is a memorandum from the Deputy Chief Prosecutor and highlights, after reciting the main facts to support probable cause, that "[p]rior to any final recommendation," the Deputy Chief Prosecutor requested the Detroit Police Department to do two things. This procedure is consistent with the testimony at trial as to what occurs from an investigation stage to the warrant stage. The police request a recommendation, and frequently the prosecutor will request additional items before he will sign off on the recommendation. In this case, the prosecutor requested the police to "1) Call in the defendant for purposes of a line-up, which he had previously refused to stand [in] and if he refuses, to arrest him on probable cause that a felonious assault has been committed by him.... 2) ... to find an expert who can testify to the severity of injuries which can be caused by a cattle prod." (emphasis in original).
 
 
 21
 The Plaintiff argues that the jury simply did not believe Sergeant Pearce. The Plaintiff claims that Sergeant Pearce was "severely impeached." For example, the Plaintiff argues that Sergeant Pearce testified that all cases of police misconduct were referred to the prosecutor's office for a determination of probable cause. The Plaintiff then argues that on cross-examination Sergeant Pearce testified that cases in which the allegations of police misconduct were supported by the facts went to the prosecutor, whereas those cases with no support did not go to the prosecutor. The court fails to understand how this cross-examination is impeachment rather than clarification. Sergeant Pearce did not testify that all allegations of misconduct went to the prosecutor. He testified that the allegations first have to be investigated to see if some facts exist to support them. If the allegations are clearly unfounded, the case need not proceed further. If some basis exists to support the charges, then the "police misconduct" or "sustained criminality" case is referred to the prosecutor. The court can find no basis to support the Plaintiff's impeachment argument on the record.
 
 
 22
 Looking to the investigator's report, the March 14, 1980 memorandum from the prosecutor's office, the transcript of the Miranda warning and interview with the Plaintiff, together with the refreshed recollection of Sergeant Pearce, the court can find no basis to support the claim that the investigators intentionally misrepresented any evidence regarding a line-up to the prosecutor. The documents speak for themselves. the evidence is too strong in favor of the Defendant, and the Plaintiff has not pointed to any evidence other than claim of impeachment regarding Sergeant Pearce's testimony.
 
 
 23
 We note plaintiff's refusal to cooperate with the investigation, upon advice of his attorney, including his refusal to give a handwriting sample. After examining the record we find no error in Judge Freeman's analysis and decision in granting judgment to the City despite the jury's verdict. There is no reasonable credible evidence to support plaintiff's charge of intentional misrepresentation in respect to the police investigation report. There is ample circumstantial evidence that would connect plaintiff with the alleged mistreatment of Stiff. See Mark v. Furray, 769 F.2d 1266, 1269 (7th Cir.1985) (stating if probable cause for arrest exists, no fourth amendment claim for false arrest or malicious prosecution can lie regardless of officer's conduct).
 
 
 24
 We are disposed to believe, moreover, that any causal connection between the investigation, even if deemed negligent or not as thorough as might be expected by plaintiff, was broken by the actions of the prosecutor and the judge, both of whom would be immune by reason of their actions. See generally, Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 542, 544 (1988) (discussing judicial and prosecutorial immunity); Smith v. Varney, 803 F.2d 1469, 1471 (9th Cir.1986), modified, 811 F.2d 504 99th Cir.1987) (presumption that prosecutor exercises independent judgment in issuance of arrest warrant, officer possibly liable if he knowingly submits false evidence or pressures prosecutor).
 
 
 25
 Finally, if any constitutional violation did occur, it cannot possibly have been attributed to the execution of city "policy." Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). Although the city had a procedure for processing complaints of police misconduct, plaintiff failed to present evidence which would indicate that the procedure was designed to arrest wrongfully individuals not actually responsible for alleged misconduct. While in some instances isolated decisions of city employees may lead to municipal liability, "[s]imply going along with discretionary decisions made by one's subordinates ... is not a delegation to them of the authority to make policy." City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 927 (1988); see also, id., 108 S.Ct. at 932 (Brennan, J., dissenting) (stating, "[t]he fact that a particular official--even a policymaking official--has discretion in the exercise of particular functions does not, without more, give rise to municipal policy based on that discretion"). At worst, the evidence demonstrated that the officers assigned to the investigation did not faithfully effectuate the city's policy; the evidence clearly did not show, however, that the individual officers had the authority to establish any policy. Id., 108 S.Ct. at 932-33 (Brennan, J., dissenting).
 
 
 26
 We are satisfied that the district court considered and analyzed the necessary factors in reaching his decision for defendant. For the reasons stated herein and for the additional reasons stated by Judge Freeman in his comprehensive memorandum opinion of February 24, 1988, we affirm the entry of judgment notwithstanding the jury verdict as to the City of Detroit.
 
 
 
 [1]
 On May 14, 1979, plaintiff was assigned the duties of "doorman" at the Second Precinct in Detroit. The "doorman" is responsible for processing arrested persons: he performs a custodial search, fingerprints the person, takes and catalogs personal belongings, puts the person in the appropriate holding cell, and attends to the person's medical needs