**Arthur Eugene SHELTON,**
**Plaintiff–Appellant,**

v.

**CITY OF TAYLOR; Walter Verdun; Jeff Witherspoon; Thomas Bonner Defendants–Appellees.**

Nos. 02–1132, 02–1262, 02–1294.

United States Court of Appeals, Sixth Circuit.

Feb. 5, 2004.

Hugh M. Davis, Jr., Constitutional Litigation Associates, Detroit, MI, for Plaintiff–Appellant.

Gina U. Puzzuoli, John H. Dise, Jr., Dise & Associates, Southfield, MI, for Defendants–Appellees.

Before BOGGS, Chief Judge;  and KRUPANSKY and CLAY, Circuit Judges.

BOGGS, Chief Judge.

Plaintiff Arthur Shelton appeals the grant of summary judgment to the City of Taylor on his claim that police used excessive force when arresting him. Shelton also challenges the district court's denial of a series of related motions, precluding his ability to bring this case to trial. Because Shelton's underlying claim of excessive force cannot survive summary judgment, and because the district court did not abuse its discretion in its other rulings, we affirm the decisions below in all respects.

## I

As a preliminary matter, we must address the City's contention that we do not have jurisdiction over this case because Shelton did not make a timely motion for reconsideration of the judgment against him. A careful review of the Federal Rules of Civil Procedure reveals that the City's assertion is not correct. A motion to amend or alter a judgment must be filed no later than ten days after entry of judgment. Fed.R.Civ.P. 59(e). However, when the amount of time allowed for filing is less than eleven days, then intermediate weekends and holidays are not counted towards the ten-day deadline. Fed.R.Civ.P. 6(a). The count starts the day after the "act, event, or default from which the designated period begins to run." *Ibid.* The district court docketed the entry of summary judgment on November 6, 2001, and therefore the filing period began to run on November 7, 2001. November 10, 11, 12, 17, and 18 do not count against Shelton because they represent weekends and the Veterans' Day holiday. Shelton filed his motion for reconsideration on November 21, the tenth countable day of the designated period, and therefore it was timely filed.

The City also contends that Shelton did not file his appeal in a timely manner because the thirty-day window for notice of appeal started with the November 6, 2001 grant of summary judgment, rather than the January 7, 2002 denial of his motion to reconsider; this argument is without merit. The designated period for notice of appeals starts with the denial of the motion for reconsideration. *United States v. Ibarra,* 502 U.S. 1, 7, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991). Shelton filed his notice of appeal on January 25, 2002, well within the thirty-day limit. Therefore, this court has jurisdiction over this appeal.

## II

Officers Walter Verdun and Jeff Witherspoon, defendants in this action, arrived at the residence of William Tetford Thompson, a friend of the plaintiff, Arthur Eugene Shelton, on June 22, 1997 at about 3 a.m., after a neighbor called the police complaining of hearing gunshots. Shelton was demonstrating the effects of "accurizing" a weapon by firing his handgun in Thompson's backyard. The officers told Shelton to stop and put down the weapon. After failing to persuade the officers that the gun was unloaded. Shelton reluctantly gave them the gun. Shelton nevertheless grew increasingly belligerent, prompting the police to arrest him. He objected vociferously both to the grounds for arrest and to being handcuffed. According to Thompson, Shelton did not have to put his hands behind his back because the police "pretty much done that for him." Shelton asked Officer Verdun to handcuff him in front, but Verdun denied the request, although he put the restraints on loosely. Shelton claimed that his arm was broken, although he had no signs of external injury or a cast.[1]

---

1. The record is unclear as to whether Shelton claimed his hand or his arm was broken; he

The record differs on Shelton's behavior on the way to the police station. Shelton asserts in his brief that he fell asleep because he had just taken medication and had been drinking. Verdun agrees that Shelton showed signs of impairment, but he maintains that Shelton remained awake on the trip to the police station. The parties agree that, while in the squad car, Shelton requested that the handcuffs be removed; Verdun did not comply immediately because they were about a minute from the police station, but he removed the restraints shortly after arrival. It is undisputed that Verdun has some difficulty removing Shelton from the police car, as Shelton's knees kept buckling. Shelton claims in his deposition that he was pulled out of the car by his broken arm, and then kneed in the back, producing an "intestinal injury" and pain so intense it caused him to pass out.[2]

Shelton has produced no evidentiary basis for this excessive force claim. The booking record indicates that Shelton did not request medical attention for either his hand or supposed internal injuries. He was put into a cell and when he was finger-printed, photographed, and processed, his picture showed him smiling. Shelton was released at 3:30 p.m. that same day, June 22, 1997.

A few days later, Shelton visited the chief of police, Thomas Bonner, who was an old family friend, to complain about the incident and retrieve his gun, which the police had confiscated. Bonner returned the weapon and said "he would look into" Shelton's complaints. Shelton never filed a written complaint, and neither party took further action until this lawsuit was filed.

As a result of the incident on June 22. Shelton pleaded no contest to a violation of a gun possession ordinance and paid a fine of $100. The plea was taken under advisement, pending a period of good behavior, and the case was dismissed on November 4, 1998.

Shelton filed this lawsuit on June 21, 2000 in state court, one day short of three years since the original incident, and it was removed to federal district court. He alleged six counts of wrongdoing: state law claims of assault, false arrest, false imprisonment, and malicious prosecution; federal civil rights claims of excessive force during arrest under 42 U.S.C. § 1983; and unconstitutional practices by the City, including concert of action by the police for failing to investigate his complaint about his arrest.

The district court dismissed the assault claim because the Michigan statute of limitations of two years had run. Shelton does not challenge this ruling on appeal. The court held that, under Michigan law, the two-year statute of limitations for false arrest begins to run when the prisoner is released. Thus, the district court also dismissed that claim. Reasoning that dismissal pursuant to a no-contest plea kept under advisement does not constitute a "favorable end" for the defendant, the prerequisite for a malicious prosecution claim, the district court also dismissed that cause of action.

Finally, the district court refused to grant Shelton leave to amend his complaint to add more parties, exercising its discretion under Rule 15(a) of the Federal

has asserted both. In oral argument, his counsel added further ambiguity by referring to Shelton's broken wrist.

**2.** The record again is inconsistent concerning how long Shelton was allegedly unconscious; his brief states "several hours," but it also quotes a deposition in which Shelton claims he did not regain consciousness until between one and two "the next afternoon." In any case, Shelton had recovered sufficiently to be booked and released from jail by 3:30 p.m.

Rules of Civil Procedure. Shelton does not raise this issue on appeal. Subsequently, the court also declined to allow Shelton to amend his pleadings to sue the police officers in their personal capacities, and it granted summary judgment to the defendants on all of Shelton's § 1983 claims. The City then moved for Shelton to pay its attorney's fees and costs under the Civil Rights Attorney's Fees Act of 1976, and Shelton responded with a motion for Rule 11 sanctions against the City for seeking attorney's fees. The district court denied both motions. Shelton now appeals the grant of summary judgment and denial of sanctions, and the City appeals the denial of attorney's fees.

### III

■ We must agree with the district court that Shelton did not present even a "scintilla of evidence" to support his claim, much less enough evidence "on which the jury could reasonably find for the non-movant," *Cornist v. B.J.T. Auto Sales, Inc.,* 272 F.3d 322, 326 (6th Cir.2001) (internal citations omitted). Handcuffing alone can amount to excessive force. *Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir.1993) (stating that an excessive use of force claim could be premised on handcuffing alone if the officer 1) knew that the suspect was injured and 2) believed that the person posed no threat). However, without evidence of unreasonable force, the simple act of handcuffing a suspect in the course of a lawful arrest cannot form the basis of an excessive force claim. *E.g., Kain v. Nesbitt,* 156 F.3d 669, 672 (6th Cir.1998). Shelton cannot meet this minimal *Walton* test. He did not produce 1) any medical evidence to show

that he had any injury at all or 2) any direct evidence that he requested, or subsequently sought, any medical attention for the injuries he allegedly sustained while in police custody.[3] There is no genuine issue that Officer Verdun knew that Shelton was injured when he arrested him, even assuming that Shelton actually was hurt. Shelton merely asserted that his arm and/or hand was broken, but he was not wearing a cast, nor was he physically unable to place his hands behind his back. Shelton's friend, with whom he had been firing the gun, testified that he could not recall Shelton having a broken arm or wearing a cast. Furthermore, Shelton had been discharging a firearm, was belligerent, and had been drinking. Given the potentially volatile combination of firearms and alcohol, the officers were only prudent to secure his hand behind his back. Therefore, there is no genuine issue that Officer Verdun knew that Shelton posed no threat, a prerequisite to an excessive force claim premised on handcuffing.

Although Sixth Circuit case law supports the possibility of a meritorious excessive use of force claim resulting from improper handcuffing. Shelton has failed to demonstrate even a basic level of impropriety. *Cf. Grooms v. Dockter,* No. 95–1261, 1996 WL 26917, 1996 U.S.App. LEXIS 3444, at *6 (6th Cir. Jan. 23, 1996) (unpublished) (affirming denial of summary judgment to defendant police officers because they left a suspect handcuffed too tightly for 30 minutes, resulting in serious damage to his hands and wrists, and taunted him when he complained about the restraint); *Kostrzewa v. Troy,* 247 F.3d 633, 639–41 (6th Cir.2001) (reversing a 12(b)(6) dismissal to allow the plaintiff to present his claim that

---

**3.** Without any citation to the record, Shelton asserts that "[d]efendants had in their possession plaintiff's medical records from Heritage Hospital clearly demonstrating that he had a

broken hand." Such unsupported factual assertions cannot create a genuine issue for trial.

the officers had used excessive force in cuffing him too tightly, resulting in permanent damage, when they stopped him for an illegal left turn and arrested him for driving with a suspended license and owing child support); *see also Martin v. Heideman*, 106 F.3d 1308 (6th Cir.1997) (keeping the plaintiff handcuffed 35 minutes after he complained of his hands being numb created a genuine issue of material fact in an excessive force case). Shelton produced no evidence of any injury at all, much less the type of damage that was alleged in *Grooms* and *Kostrzewa*. Even considering the evidence in the light most favorable to the plaintiff, it amounts to no more than unsubstantiated allegations, and therefore the district court did not err in granting summary judgment on the excessive force claims.

## IV

### A. No Contest Plea

██ Shelton alleged malicious prosecution stemming from the charges that were filed against him for discharging a weapon in a residential district, although he pled no-contest and paid a fine of $100. This claim must fail as a matter of law because under the common law a plaintiff may not assert malicious prosecution unless the court proceeding has ended in his favor. *See Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Walker v. Schaeffer*, the plaintiffs argued that they could pursue a malicious prosecution claim because they had pleaded no contest, rather than guilty; they pointed to Federal Rule of Evidence 410, which prohibits using a defendant's no-contest plea in a criminal case against him in a subsequent civil suit. *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir.1988). This circuit declined to allow Rule 410 to become an offensive weapon and thereby undermine its basic purpose: to promote settlement

by ensuring that a defendant need not fear later repercussions from cooperating with the judicial system *Id.* at 143. Shelton's argument that his no-contest plea and the subsequent dismissal of the charge constitutes an outcome in his favor falls squarely within the *Walker* reasoning. Shelton is attempting to use his compromise with the judicial system to his advantage, a legal maneuver that *Walker* forbids. *See Sandul v. Larion*, No. 94–1233, 1995 WL 216919, at \*4 (6th Cir. Apr. 11, 1995) (unpublished opinion) (Sandul's plea of no contest to charge of attempted felonious assault precluded his subsequent claim for false arrest).

Because Shelton cannot make a malicious prosecution claim following a no-contest plea, this court need not consider his argument that the district court erred in calculating the statute of limitations for his action.

### B. Complaint Procedure

██ A few days after his arrest and release. Shelton went to the police station to meet with Police Chief Bonner, an old family friend, to get his gun back and complain about the incident. Shelton claims that Bonner said he would "look into it." a statement that Bonner does not recall. The record indicates that Shelton never submitted a written complaint nor did he follow up with the police department's internal investigation department. Therefore he cannot sustain a claim that the police department colluded to block investigation of his allegations.

As a matter of law, however, it does not matter who is responsible for this particular complaint falling through the cracks. The City of Taylor and Police Chief Bonner can only be liable if the established policy they were following was itself unconstitutional. *Matthews v. Jones* 35 F.3d 1046, 1049 (6th Cir.1994) (citing *Monell v.*

*Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The district court held that there was no genuine issue of material fact as to whether the Taylor police department had a constitutionally permissible system for dealing with complaints. The record contains evidence of a thorough administrative investigation procedure to review an officer's use of force, and therefore we can find no basis on which to question the conclusions of the district court.

Because the City's procedures are not constitutionally unsound, the City would not be liable, even if Bonner were remiss in not pursuing Shelton's concerns. *Monell,* 436 U.S. at 691 (holding that a municipality is not liable under § 1983 for injuries that individual employees may inflict; only if implementation of a policy causes constitutional injury can a city be successfully sued); *Walczak v. City of Detroit,* No. 88–1338, 1989 WL 56522, 1989 U.S.App. LEXIS 7626, at *11 (6th Cir. May 31, 1989) (unpublished opinion) (rejecting a police officer's claim against the city because the police complaint system was not designed to identify the wrong officer, even if it had done so in his case). Therefore, the district court was correct to grant summary judgment to the City on Shelton's claim concerning the complaint system of the City police department.

## C.  Handcuffing Policy

■  Shelton alleges that the City's policy of behind-the-back handcuffing of all persons charged with a misdemeanor is unconstitutional, but the language of the policy belies that claim. The City's policy directive on using handcuffs provides, in relevant part:

> Handcuffs may be used on prisoners charged with a misdemeanor at the discretion of the arresting officer. To obtain maximum security, prisoners shall be handcuffed with their hands behind their backs whenever possible.

The plain language of the policy gives the arresting officer the discretion to handcuff persons charged with a misdemeanor, and even when an officer chooses to handcuff, he need not handcuff behind the back in all instances, only "whenever possible." In fact, the policy goes on to state that "officers shall give special consideration to prisoners with hand or arm disabilities when applying restraining devices." Shelton's reliance on *Kostrzewa* is unavailing because the court in that case found that a policy requiring handcuffing "in all cases" and "regardless of the circumstances" might be unconstitutional. *Kostrzewa,* 247 F.3d at 645. In this case it is clear that the City's policy affords the officers discretion in handcuffing misdemeanor suspects behind the back. Because there is no evidence that the City's discretionary policy exposes detainees to an undue risk of severe pain or injury, Shelton has not created a triable issue as to whether the policy is unconstitutional.

## V

■  After the City obtained summary judgment, it filed a motion for an award of attorney's fees, which the district court denied. This circuit reviews a decision on awarding attorney's fees for abuse of discretion. *Perotti v. Seiter,* 935 F.2d 761, 763 (6th Cir.1991). Abuse of discretion means "a definite and firm conviction that the trial court committed a clear error of judgment." *Amernational Indus. v. Action–Tungsram, Inc.,* 925 F.2d 970, 975 (6th Cir.1991). The Civil Rights Attorney's Fees Award Act of 1976 states that "in any action or proceeding to enforce a provision of [42 U.S.C. § 1983] ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...." 42

U.S.C. § 1988(b). A district court's decision regarding attorney's fees under § 1988 is entitled to substantial deference *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir.2003). Because an award of attorney's fees is predicated on factual matters, an appellate court should defer to the district court. *Reed v. Rhodes*, 179 F.3d 453, 469 n. 2 (6th Cir.1999) (citation omitted).

Although § 1988 allows the "prevailing party" to receive attorney's fees, courts are reluctant to award fees to defendants for fear of chilling willingness to bring legitimate civil rights claims. Accordingly, a prevailing defendant should recover only if the district court finds that the original complaint was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir.1994). The Supreme Court has cautioned that district courts should not engage in *post hoc* reasoning and decide the original complaint was groundless because the plaintiff did not prevail. *Christiansburg Garment Co., v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Furthermore, imposing attorney's fees on a defendant is an "extreme sanction" that must be limited to "truly egregious ... misconduct." *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir.1986). Nevertheless, attorney's fees are appropriate if "the plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff continues to litigate." *Smith v. Smythe–Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985).

Citing the Supreme Court admonition in *Christiansburg* not to engage in *post hoc* reasoning, the district court found that Shelton's action was not the kind of "egregious misconduct" that warrants imposition of fees and costs. Although the district court did not spell out its reasoning explicitly, it is clear from the citations in its order that it balanced the weak merits of Shelton's case with the public policy served when courts use extreme care in awarding attorney's fees to civil rights defendants. The district court apparently decided that avoiding any chilling effect on civil rights litigation was more important than reimbursing the City for its costs in defending this matter.

Discretion implies a range of choice. *Wheat v. United States*, 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Kern v. TXO Production Corp.*, 738 F.2d 968, 971 (8th Cir.1984) (observing "[t]he very concept of discretion presupposes a zone of choice within which the trial courts may go either way"). Therefore, although the City presented a strong case for an award of attorney's fees, the district court did not commit a "clear error of judgment" in denying its motion.

In response to the motion for attorney's fees, Shelton filed a motion for Rule 11 sanctions against the City. As acknowledged above, the motion for attorney's fees was based on sound legal argument. Therefore, the denial of Rule 11 sanctions was not an abuse of discretion.

## VI

The district court did not err when it granted summary judgment to the defendants. It did not abuse its discretion in denying Shelton's motions for leave to amend and for Rule 11 sanctions, nor in denying the City's motion for attorney's fees. We therefore AFFIRM the district court in all respects.