NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0732n.06
Filed: November 26, 2008

No. 06-3658

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOHN ROGERS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CITY OF WARREN; OFFICER HIPPLE, WARREN | ) | COURT FOR THE NORTHERN |
| POLICE OFFICER; JOHN DOE, WARREN POLICE | ) | DISTRICT OF OHIO |
| OFFICER; and CHIEF MANDOPOULOS, CHIEF OF | ) | |
| POLICE, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| _____ | ) | |

BEFORE: CLAY and GRIFFIN, Circuit Judges; and STAFFORD, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff John Rogers appeals the district court's sua sponte dismissal of his civil rights action

for failure to prosecute. The district court found that plaintiff's failure to appear at two court-ordered

conferences constituted "extreme fault" and dismissed the complaint with prejudice. Because we

hold that the district court did not abuse its discretion, we affirm.

I.

_____

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern
District of Florida, sitting by designation.

On September 9, 2003, plaintiff John Rogers filed a complaint under 42 U.S.C. § 1983 against the City of Warren, Ohio, its police department, and certain police officers alleging the existence of a department-wide excessive-force policy, use of excessive force against him, failure to train, and failure to provide medical treatment. On December 1, 2003, the City moved for summary judgment. At that time, the City also requested entry of a protective order, claiming that plaintiff's discovery requests violated the terms of the district court's case management order. On February 17, 2004, after twice moving the district court for an enlargement of time, plaintiff filed his opposition to the City's motion for summary judgment.

On April 13, 2004, the district court granted in part and denied in part the City's motion for summary judgment. The court ordered the parties to complete discovery on the remaining issues by September 1, 2004, and scheduled a status conference for September 2, 2004. In addition, the district court ordered plaintiff's counsel, Attorney Richard Olivito, to obtain co-counsel (under penalty of sanction) before he advanced with the second phase of discovery.[1] The district court specifically warned Olivito that if he failed to obtain co-counsel by April 30, 2004, he would be removed from the case. On May 4, 2004, Attorney Clair M. Carlin entered an appearance as co-counsel on behalf of plaintiff.

On June 15, 2004, the parties filed a joint motion seeking to stay the case while the parties explored private mediation. The district court construed their motion as a request for a settlement

---

[1]The district court cited Attorney Olivito's history of delay before it in a companion case, *Kimble v. Hoso*, 4:03-cv-2379, as the basis for its order.

conference and scheduled same before U.S. Magistrate Judge George J. Limbert.  On July 21, 2004, the parties gathered in Magistrate Judge Limbert's chambers for the court-ordered settlement conference.  Plaintiff's counsel, Attorneys Olivito and Carlin were present, as were defense counsel, Attorneys Hillary Taylor and James Sanders.  The plaintiff, John Rogers, however, was not present. When Magistrate Judge Limbert asked Attorneys Olivito and Carlin about Rogers's whereabouts, "they explained that they had received no response from Plaintiff as to his plan to attend the settlement conference and they had otherwise been unable to reach Plaintiff."  Relying on Federal Rule of Civil Procedure 16(f)(1)(A),[2] Magistrate Limbert issued a Report and Recommendation ("R&R") suggesting that the district judge enter an order to show cause why the court should not sanction Rogers for his failure to appear.  The district judge adopted the magistrate's R&R that same day, ordering "[p]laintiff to show cause on or before August 4, 2004, why th[e] case should not be dismissed *for failure to prosecute*" (emphasis added).

On August 3, 2004, Attorney Carlin responded to the show cause order, reporting that he had spoken with Rogers on July 26, 2004, and that Rogers was prepared to prosecute the case.  In a somewhat unusual twist, Carlin also reported that the parties had tentatively agreed to submit Rogers's case to binding arbitration on a legal reality television show.

Shortly thereafter, Attorney Carlin moved to withdraw as Rogers's counsel.  Attached to Carlin's motion to withdraw was a letter written by Attorney Olivito, which stated that the City had

---

[2] FED. R. CIV. P. 16(f)(1)(A) authorizes a district court to impose sanctions on a party or its attorney for failure to appear at a scheduling or other pretrial conference, including involuntary dismissal under FED. R. CIV. P. 37(b)(2)(A)(v).

decided against binding arbitration and that Rogers no longer required Carlin's services. In response to Attorney Carlin's motion, the district court scheduled a status conference before Magistrate Limbert on September 28, 2004, and ordered the following:

> All counsel must attend the status conference and be prepared to discuss: 1) *why this matter should not be dismissed for failure to prosecute*; and 2) the conflict between Attorney Carlin's motion to withdraw as counsel and this Court's order prohibiting Attorney Olivito from proceeding in this matter without co-counsel.

(Emphasis added.)

At the conclusion of the September 28, 2004, status conference, Magistrate Limbert instructed Attorney Olivito to obtain co-counsel by October 12, 2004. On the day of the deadline, Attorney Olivito, along with his purported new counsel, Attorney Gilbert Rucker, called Magistrate Limbert's chambers. Attorney Rucker reported that Attorney Olivito "had very recently" contacted him about becoming co-counsel in Rogers's case. Because Rucker had just been contacted, he requested additional time to review Rogers's case before filing his appearance.

Based on the representations of Attorneys Rucker and Olivito, Magistrate Limbert granted an enlargement of time until October 18, 2004, for Olivito to obtain co-counsel. The magistrate also warned Olivito that he would recommend dismissal of plaintiff's case for failure to prosecute if Olivito failed to comply with the extended deadline. On October 14, 2004, Attorney Steve Paulson entered an appearance as co-counsel in Rogers's case.

On October 21, 2004, Magistrate Limbert issued an R&R recommending that the district court grant Attorney Carlin's motion to withdraw in light of Attorney Paulson's appearance. He also

recommended that the district court find that plaintiff had satisfied the show cause order because Attorney Olivito had retained co-counsel. The district court adopted the R&R.

On December 16, 2004, the City filed its second motion for summary judgment. Two weeks after the deadline for filing his opposition, Olivito moved the court for a forty-five day enlargement of time, which the district court granted. While the second motion for summary judgment was pending, the district court received notice that discipline proceedings against Attorney Olivito were pending before the Supreme Court of Ohio. The district court also discovered that Attorney Paulson had not participated as co-counsel in the case beyond filing his appearance in October 2004. In light of these events, the court scheduled a status conference on March 8, 2006, with the following instruction: "[a]ll parties and lead counsel shall appear in person."

On March 8, 2006, Attorney Olivito appeared at the status conference without co-counsel. Rogers also failed to appear. Defense counsel appeared on behalf of defendants, although no individually named defendants appeared. Attorney Olivito informed the court that Attorney Paulson was no longer co-counsel in Rogers's case. In addition, Attorney Olivito stated that Rogers would not attend the status conference but offered no explanation for Rogers's absence. At the conclusion of the conference, the court entered the following order, which stated, in pertinent part:

> *The Plaintiff, John Rogers, did not appear at the status conference as ordered by the Court on February 22, 2006.* See (Dkt. # 66). This is the second status conference/mediation at which the Plaintiff has failed to appear in direct violation of [a] Court order. *Accordingly, the Court orders that the Plaintiff shall SHOW CAUSE on or before March 17, 2006 as to why this matter should not be DISMISSED for failure to prosecute.* The Court further orders that Attorney Olivito no longer has co-counsel as repeatedly ordered by the Court. Co-counsel shall file a notice of appearance in this matter by March 17, 2006. Counsel for the defendants indicated

> that they will withdraw all pending motions subject to refile upon the appearance of new counsel for the plaintiffs on or before March 17, 2006. The Clerk of Courts shall send a copy of this order to the Plaintiff at 109 Esther Drive, Warren, Ohio 44483.

(Emphasis added.) On March 14, 2006, the post office returned the show cause order mailed directly to Rogers with a return mail notice to the Clerk's Office, indicating "Return to Sender. No such number. Unable to forward." In response to the returned mail notice, Attorney Olivito contacted the district court stating that he had obtained a different address for Rogers, but that he had visited the new address and could not find Rogers.

Attorney Olivito moved the court to either remove or stay the show cause order "relating to plaintiff's posture in th[e] [] case." He also stated that his new co-counsel, Attorney Hinnant, required additional time to review the case before proceeding.[3] Plaintiff's motion to stay or remove the show cause order rejected the court's concerns about a failure to prosecute, noting that all relevant issues were fully briefed and ripe for disposition. Plaintiff's motion did not address the first portion of the court's order requiring an explanation for Rogers's absence at the March 8, 2006, status conference.

On March 20, 2006, the district court dismissed plaintiff's complaint for failure to prosecute, finding that plaintiff's "persistent failure to appear" constituted "extreme fault." The district court acknowledged the severity of its sanction, but found that it had provided Rogers and his counsel with

---

[3] On that same day, Olivito filed a motion for *pro hac vice* on behalf of Attorney Hinnant, which presumably brought him in compliance with the second half of the court's March 8, 2006, show cause order.

prior notice and ample opportunity to explain Rogers's failures to appear before dismissing his complaint. The court also noted that allowing "additional time . . . would achieve only further delay and expense in an action that appears to be of no concern to the Plaintiff."

Plaintiff moved the court for reconsideration, asserting that Olivito had difficulty contacting Rogers because of Rogers's dire financial situation. On April 28, 2006, the district court denied plaintiff's motion in a marginal order. This appeal followed.

II.

The City asserts that we lack jurisdiction under FED. R. APP. P. 4(a)(1)(A), which requires a party to file a notice of appeal "within 30 days after the judgment or order appealed from is entered." *Id.* The City claims that plaintiff filed an untimely notice of appeal because plaintiff's notice, dated April 26, 2006, seeks review of a March 20, 2006, order of dismissal. The City, however, fails to account for plaintiff's post-judgment motion, which the district court denied on April 28, 2006. "The designated period for notice of appeals starts with the denial of the motion for reconsideration." *Shelton v. City of Taylor,* 92 F. App'x 178, 180 (6th Cir. 2006) (unpublished) (quoting *United States v. Ibarra*, 502 U.S. 1, 7 (1991)). Plaintiff's thirty-day period did not expire until May 27, 2006, and thus the City's jurisdictional argument lacks merit.

III.

We have held that a district court has three different sources of authority to dismiss a case for failure to prosecute. *See Coleman v. Am. Red Cross,* 23 F.3d 1091, 1094, n.1 (6th Cir. 1994). The first source is FED. R. CIV. P. 16(f), which permits dismissal under FED. R. CIV. P.

37(b)(2)(A)(v) when a party or its attorney fails to appear at a scheduling or other pretrial conference. *See* FED. R. CIV. P. 16(f)(1)(A). The second source is FED. R. CIV. P. 41(b), which permits the court to involuntarily dismiss an action if a plaintiff fails to prosecute his case or to comply with a court order.[4] The third source is the court's inherent power to "protect[] the due and orderly administration of justice, and . . . maintain[] the authority and dignity of the court . . . ." *Bowles v. City of Cleveland*, 129 F. App'x 239, 241 (6th Cir. 2005) (unpublished) (citing *Cooke v. United States,* 267 U.S. 517, 539 (1925)).

Here, the district court did not state the authority on which it relied when it dismissed plaintiff's complaint. Regardless of the source of authority, we apply an abuse-of-discretion standard when reviewing a district court's decision to involuntarily dismiss a case for failure to prosecute. *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) *(citing Wu v. T.W. Wang, Inc.,* 420 F.3d 641, 643 (6th Cir. 2005)). "A clear example of an abuse of discretion exists where the district court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based." *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006) (citation omitted). "A trial court also abuses its discretion when we are left with the definite and firm conviction that its conclusion was a clear error of judgment." *Id.* (citation omitted).

In *Link v. Wabash Railroad Company*, 370 U.S. 626 (1962), the Supreme Court affirmed the sua sponte dismissal of a complaint where plaintiff's counsel had a history of delay in the case and

---

[4] Although Rule 41(b) does not expressly provide for a sua sponte dismissal (the rule actually provides for dismissal on defendant's motion), it is well-settled that the district court can enter a sua sponte order of dismissal under Rule 41(b). *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962).

had failed to appear at a scheduled pretrial conference. *Id.* at 636. The Court affirmed the district court's sua sponte dismissal despite its failure to warn the plaintiff or to impose a lesser sanction. *Id.* With respect to prior notice, the Court stated "[t]he adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Link*, 370 U.S. at 632.

Subsequent to *Link*, however, we have discouraged involuntary dismissals without prior notice. For example, in *Harris v. Callwood*, 844 F.2d 1254 (6th Cir. 1988), we stated that "*in the absence of notice that dismissal is contemplated*, a district court should impose a penalty short of dismissal unless the derelict party has engaged in 'bad faith or contumacious conduct.'" *Id.* at 1256 (emphasis added). Thus, we often apply the following four-factor test to assess the appropriateness of a district court's decision to involuntarily dismiss a complaint:

> 1) whether the party's failure is due to willfulness, bad faith, or fault; 2) whether the adversary was prejudiced by the dismissed party's conduct; 3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and 4) whether less drastic sanctions were imposed or considered before dismissal of the action.[5]

---

[5] This test attempts to balance certain "competing concerns" raised in the context of involuntary dismissals, which include "[t]he court's need to manage its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant . . . [with] [a] policy [that] favors disposition of cases on their merits." *Little v. Yeutter,* 984 F.2d 160, 162 (6th Cir. 1993).

*Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001).  We refer to this test as the *Mulbah* test, or the prongs as *Mulbah* factors.[6]

A.

Plaintiff first asserts that the district court erred when it found that his failures to appear amounted to extreme fault.  In support of this argument, plaintiff relies on his March 26, 2006, motion for reconsideration, which provides a detailed explanation for his absences and attempts to rebut any finding of perceived fault.

Plaintiff remained doggedly silent, however, when ordered to respond. The district court provided plaintiff with ample opportunity to explain his failures to appear when it entered its two orders to show cause.  "A [motion for reconsideration] is not the proper vehicle to raise arguments that should have been made before judgment." *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 367 (6th  Cir. 2007) (unpublished) (*citing GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).  In addition, plaintiff did not amend his notice of appeal to include the district court's denial of his motion for reconsideration.  Under FED. R. APP. P. 4(a)(4)(B)(ii), a party must amend its notice of appeal to include an order denying a motion for reconsideration if the party intends to rely on that post-judgment motion as a basis for its appeal. *See Gruener v. Ohio Cas. Ins.*

---

[6] This test has been equally applied to Rule 41(b) dismissals, dismissals under Rule 37(b)(2)(A)(v), *Taylor v. Medtronics, Inc.*, 861 F.2d 980, 986 (6th Cir. 1988), and dismissals where the order did not expressly state the source of authority. *See Bowles*, 129 F. App'x at 241.  We have recently referred to this four-factor test, first articulated in *Regional Refuge Sys. Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988) (superseded in part by FED. R. CIV. P. 37(c)(1)), as the *Mulbah* test, or the prongs as *Mulbah* factors, in a recent decision. *Muncy v. G.C.R., Inc.*, 110 F. App'x 552, 556 n.4 (6th Cir. 2004) (unpublished).

*Co.,* 510 F.3d 661, 665 (6th Cir. 2008). Because plaintiff failed to do so here, we cannot consider

arguments raised in his motion for reconsideration, nor can we consider whether, in light of that

information, the trial court abused its discretion in denying plaintiff's post-judgment motion.[7] We

must consider only those facts before the district court at the time it dismissed plaintiff's complaint.

Plaintiff also asserts that the district court erred when it relied on his July 21, 2004, failure

to appear when making its finding of extreme fault. Specifically, plaintiff points to the district

court's adoption of the R&R excusing plaintiff's July 21, 2004, absence. Contrary to plaintiff's

contention, however, the R&R did not excuse his absence; rather it stated only that "[p]laintiff has

shown that attempts have been made to resolve and/or prosecute his claim despite his non-

appearance . . . although those attempts have been unsuccessful." Thus, Rogers failed to comply

with the district court's order requiring him to explain why he failed to appear at the July 21, 2004,

conference.[8]

In *Schafer v. City of Defiance Police Department,* we explained that "[t]o support a finding

that a plaintiff's actions were motivated by willfulness, bad faith, or fault, under the first factor" his

---

[7] Even if we were to consider plaintiff's untimely explanation, the record calls into question his belated assertion that he failed to attend the July 21, 2004, mediation because Attorney Carlin instructed plaintiff to wait at his office in Poland, Ohio. According to Magistrate Judge Limbert's R&R, Attorneys Olivito and Carlin "explained that they had received no response from Plaintiff as to his plan to attend the settlement conference and they had otherwise been unable to reach Plaintiff." In addition, Attorney Carlin is now deceased and cannot verify plaintiff's excuse.

[8] In addition, plaintiff's argument is tantamount to asserting that a trial court can never consider prior violative conduct if that prior conduct is deemed cured. Such a position would conflict with our obligation to assess the totality of plaintiff's conduct in the underlying case. *See Mulbah,* 261 F.3d at 590-91.

conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." 529 F.3d 731, 737 (6th Cir. 2008) (*citing Wu,* 420 F.3d at 643). In *Rush v. McLendon*, we affirmed the dismissal of a complaint where a plaintiff did not appear on the first day of trial and failed to provide a reason for his non-appearance. 21 F.3d 428, 429 (6th Cir. 1994).[9] We concluded in *Rush* that the court's finding of bad faith was not clearly erroneous and its dismissal was not an abuse of discretion. *Id.* Here, the district court was faced with a plaintiff who twice failed to appear, and, despite two orders to show cause, failed to explain his non-appearance. We conclude that Rogers's apparent inability to keep his counsel informed of his whereabouts and contact information demonstrates a reckless disregard for the effect that his conduct would have on the underlying case. *Schafer*, 529 F.3d at 737.

In addition, although Attorney Olivito's conduct was not the driving force behind the district court's order of dismissal, we "may affirm on any grounds supported by the record . . . ." *Dixon v. Clem*, 492 F.3d 665, 673 (2007) (citation omitted). Attorney Olivito's patent disregard, on two separate occasions, of the court's April 15, 2004, order to secure co-counsel *under penalty of sanction* demonstrates a reckless disregard for the court's authority and the impact of his conduct on the underlying proceedings.

---

[9] The plaintiff in *Rush* filed a FED. R. CIV. P. 60(b) motion and an affidavit that explained his absence on the first day of trial. 21 F.3d at 428. We held that the trial court abused its discretion when it denied plaintiff's Rule 60(b) motion because he was entitled to a hearing to explain his absence. *Id.* Here, however, we cannot consider the arguments raised in plaintiff's Rule 59(e) motion or analyze whether the district court abused its discretion when it denied plaintiff's Rule 59(e) motion. *See* FED. R. APP. P. 4(a)(4)(B)(ii).

B.

We have held that a defendant is prejudiced by a plaintiff's conduct where the defendant "wasted time, money, and effort in pursuit of cooperation which the plaintiff was legally obligated to provide." *Schafer*, 529 F.3d at 737 (citation omitted). Here, the district court found that the City was prejudiced because its counsel was present and fully prepared to proceed at each court-ordered status conference. In short, Rogers's continued failure to appear wasted the court's time and resources, as well as defendants. This finding is sufficient to satisfy the second prong. *Id.*

C.

Plaintiff was indisputably on notice from the court that if he did not adequately explain his March 6, 2006, failure to appear, his complaint would be dismissed for failure to prosecute. The trial court (and magistrate judge) unambiguously warned that involuntary dismissal was possible in orders dated July 23, 2004, August 25, 2004, August 31, 2004, September 14, 2004, October 13, 2004, and March 8, 2006. In addition to the court's admonitions about involuntary dismissal, the court issued two orders to show cause, which specifically placed plaintiff on notice that the trial court was contemplating dismissal. This is all the law requires. *See Harris,* 844 F.2d at 1256.

Plaintiff also asserts that the trial court's dismissal violated his due process rights under *Jones v. Flowers* because he never received a copy of the court's second show cause order. 547 U.S. 220, 225 (2006). The *Jones* Court, however, was concerned with the concept of reasonable notice, not actual, direct notice, as plaintiff contends. Notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent." *Id.* at 226. Here, the district court directly

mailed the show cause order to Rogers's address, which his attorney provided. Therefore, it was "reasonably calculated to reach the intended recipient when sent." *Id.*

Further, although Rogers asserts on appeal that he was unaware of the court's orders to show cause, his knowledge, or lack thereof, are the consequence of Rogers's own failure to keep his attorney apprised of his whereabouts and contact information. The adequacy of notice provided to Rogers turns, "to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Link,* 370 U.S. at 632.

D.

Finally, plaintiff argues that the district court should have imposed a lesser sanction before dismissing his case. The district court, however, specifically considered that option and rejected it, stating:

> [i]n light of Plaintiff's repeated failure to appear, it is difficult to conceive the manner in which any other sanction imposed by the Court would impact the Plaintiff's conduct. The Plaintiff has not responded in any discernible manner to the Court's order to show cause – therefore, it is highly unlikely that any order imposing a lesser sanction would trigger a response.

Thus, the trial court found that plaintiff's neglect of his own case would likely continue and that alternate sanctions would only further burden the court's time. As this court noted in *Harmon v. CSX Transportation, Inc.*, "we have never held that a district court is without power to dismiss a complaint, as the first and only sanction, solely on the basis of the [plaintiff] [or] plaintiff's counsel's neglect." 110 F.3d 364, 368 (6th Cir. 1997). In addition, Magistrate Judge Limbert suggested alternate sanctions in two orders, specifically, monetary sanctions and dismissal without prejudice,

on July 23, 2004, and September 28, 2004, respectively. Thus, the record itself supports the district

court's consideration of alternate sanctions before dismissing plaintiff's complaint.

IV.

For the reasons stated herein, we affirm the order of the district court.