*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0296a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DAVID H. DIXON,

           *Plaintiff-Appellant,*

    *v.*

EDWARD G. CLEM, SUSAN C. LAWSON, TIMOTHY R.
SAYLOR, MICHAEL HEAD, and TWO UNNAMED
EMPLOYEES OF THE KENTUCKY ATTORNEY
GENERAL,

           *Defendants-Appellees.*

Nos. 06-5060/5468/5856/5857

>

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 05-00466—Danny C. Reeves, District Judge.

Argued: June 8, 2007

Decided and Filed: July 10, 2007

Before: CLAY, GILMAN, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jeffrey M. Blum, LAW OFFICES OF JEFFREY M. BLUM, Louisville, Kentucky, for
Appellant. D. Brent Irvin, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky,
Jonathan C. Shaw, PORTER, SCHMITT, BANKS & BALDWIN, Paintsville, Kentucky, Kris D.
Mullins, SAVAGE, ELLIOTT, HOULIHAN, MOORE, MULLINS & SKIDMORE, Lexington,
Kentucky, for Appellees. **ON BRIEF:** Jeffrey M. Blum, LAW OFFICES OF JEFFREY M. BLUM,
Louisville, Kentucky, for Appellant. D. Brent Irvin, OFFICE OF THE ATTORNEY GENERAL,
Frankfort, Kentucky, Jonathan C. Shaw, Michael J. Schmitt, PORTER, SCHMITT, BANKS &
BALDWIN, Paintsville, Kentucky, Kris D. Mullins, Robert F. Houlihan, Jr., SAVAGE, ELLIOTT,
HOULIHAN, MOORE, MULLINS & SKIDMORE, Lexington, Kentucky, Johnnie L. Turner, LAW
OFFICES OF JOHNNIE L. TURNER, Harlan, Kentucky, for Appellees.

_____

## AMENDED OPINION

_____

    RONALD LEE GILMAN, Circuit Judge. In 1996, David H. Dixon lost his job as a teacher
at Cumberland High School in Harlan County, Kentucky after the revelation that he had taken
topless photographs of S.C., one of his female students. A state administrative tribunal subsequently

upheld his termination following a hearing in which the school introduced numerous photographs to validate its determination that Dixon had indeed engaged in "conduct unbecoming a teacher."

Claiming that the state tribunal and related defendants had violated his constitutional right to the due process of law by allowing "faked" photographs to be submitted against him, Dixon brought the instant suit in federal court pursuant to 42 U.S.C. § 1983. The district court dismissed Dixon's claims against each of the defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, holding that Dixon had failed to comply with the applicable one-year statute of limitations. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.     Factual background

At the time Dixon lost his job, he was in his 26th year of teaching carpentry at Cumberland High School. He also maintained a studio in downtown Cumberland that allowed him to satisfy his lifelong passion for photography. Dixon is considerably accomplished in the field, having received several awards for his work. He was allowed to pursue his alternative career as a professional photographer with the official permission of the school.

At least in the beginning, the photo shoot at issue in the present case was completely innocent. Dixon, operating with school approval, had offered students the opportunity to come to his studio on October 24, 1995 to retake their senior yearbook pictures. S.C. was one of the students who took Dixon up on his offer. She and another female student arrived at the studio around 6:00 p.m. that evening. Ultimately, the other girl left, and S.C. and Dixon found themselves alone together. In at least some of the pictures that Dixon then took of her, S.C. was wearing no clothing from the waist up, although her nipples were covered either by her hair or a "fishnet."

Dixon received a letter almost five months later informing him that he had been suspended by the school pending termination of his contract. The letter, authored by then-Superintendent of the Harlan County School System Grace Ann Tolliver, cited Dixon's having taken "topless" photographs of a student. This was deemed to be "conduct unbecoming a teacher" within the meaning of Ky. Rev. Stat. Ann. (KRS) § 161.790(1)(b).

### B.     Procedural background

A long and complex road of hearings, appeals, remands, and lawsuits ensued. Because Dixon's claims stem principally from alleged due process violations during his state proceedings, this procedural history is far more relevant than the factual background to the issues involved in this appeal. The district court's concise summary of the relevant state proceedings reads as follows:

> To terminate Dixon's contract, a tribunal was convened by the Harlan County School Board to hear the charges against Dixon. Susan Lawson, the school board's attorney, presented evidence against Dixon, including several groups of photographs which showed S.C. without any clothing above the waist. Dixon admitted to taking some of the photographs, arguing they were not "nude" because the student's nipples and part of her breast were covered with either hair or a fishnet. Dixon adamantly denied taking other photographs which were more revealing, stating that the photographs were not his.
>
> The tribunal unanimously found Dixon guilty of conduct unbecoming a teacher and, by a 2-1 vote, upheld Tolliver's recommendation that Dixon be terminated. The tribunal based this decision on unanimous findings that Dixon participated in guiding S.C. in the poses in which she has no clothes above the waist, that S.C. never told

Dixon she was 18, and that Dixon took all of the photographs and those photographs were unaltered. Dixon's own counsel at the hearing, JoEllen McComb, admitted that Dixon took photographs of S.C. without any clothing above the waist.

Dixon appealed the decision to the Harlan Circuit Court. However, after an approximate eight year delay (the reasons for which are unclear), Judge R. Cletus Maricle ordered a re-sentencing of Dixon, finding that the instructions given by the hearing officer were erroneous and that additional mitigating factors should be considered. Judge Maricle determined that, under Kentucky law, the tribunal should have been explicitly informed that in addition to upholding or vacating Dixon's termination, the tribunal could have imposed a lesser punishment even with its finding of conduct unbecoming a teacher. The Kentucky Court of Appeals agreed, and clarified that "[t]he trial court upheld the finding of conduct unbecoming a teacher but remanded for additional findings that may or may not result in the imposition of a lesser sentence." The state appeals court further noted that no additional proof was to be taken.

On September 26-28, 2005, the re-sentencing was held with Michael Head serving as the hearing officer. The evidence from the previous hearing held eight [years] earlier . . . was put into the record over the objections of Dixon's counsel. Head then instructed the new tribunal to make findings of fact as to S.C.'s age representation to Dixon and as to who suggested the poses, as per Judge Maricle's August 15th Order. The tribunal was then given the correct instructions, and upheld Dixon's termination. This action followed.

*Dixon v. Clem*, 404 F. Supp. 2d 961, 963-64 (E.D. Ky. 2005) (citations omitted).

Dixon's § 1983 complaint, initially filed prior to the second tribunal hearing but amended shortly thereafter in early October of 2005, named the following four individuals as defendants: (1) Edward G. Clem, the principal at Cumberland High School, (2) Susan C. Lawson, the school's attorney at the first hearing and for two years thereafter, (3) Timothy R. Saylor, the Superintendent of the Harlan County School System since 2000, and (4) Michael Head, the presiding officer at Dixon's second tribunal hearing. Dixon sued Clem and Lawson in their individual capacities only, whereas Saylor and Head were sued in both their individual and official capacities.

Although the district court declined to conclude that Dixon's claims were frivolous, it determined that they were "extremely close to the line," "largely specious," and "extremely unlikely to prevail," all as set forth in its subsequent order imposing sanctions on Dixon's attorney, Jeffrey Blum. *Dixon v. Clem*, No. Civ.A. 605-466-DCR, 2006 WL 751235, at *1-2 (E.D. Ky. Mar. 21, 2006). The court noted that,

[a]t it[s] simplest, Dixon's claim was that Clem, Saylor and Lawson "had it in for him" and, as a result, they manufactured evidence to ensure that he would be fired from his position. Dixon viewed the use of the allegedly doctored photographs (both in his first and second tribunal hearing) as a violation of his civil rights under 42 U.S.C. § 1983.

*Id.* at *1.

But the district court never reached the merits of Dixon's claims because it concluded that his complaint had been filed long after the one-year statute of limitations had expired. Specifically, the court determined that "[t]he record is clear that Dixon was aware of the existence of the forged and/or altered photographs as early as August of 1996," and that "[s]ince these photographs were the cause of Dixon's injury, the statute of limitations began to run from the pictures['] use at the first

tribunal on August 1 and 2, 1996." *Dixon*, 404 F. Supp. 2d at 965-66. His § 1983 complaint, filed in August of 2005, therefore came eight years too late. The court denied Dixon's subsequent motion to reconsider the judgment, reasoning that Dixon was simply "re-arguing" the issues that the court had resolved in its initial opinion.

Believing that these rulings made them the "prevailing parties" within the meaning of 42 U.S.C. § 1988, the defendants filed a motion for costs and attorney fees. The district court agreed that the defendants were "the prevailing parties at this point in the litigation," but denied their motion on the ground that Dixon's claims, although "extremely unlikely to prevail," were not "frivolous or groundless." *Dixon*, 2006 WL 751235, at *2. Despite this determination, the court decided that sanctions were appropriate against Blum under the less onerous standard governing 28 U.S.C. § 1927. Finally, the district court denied as moot Dixon's last-ditch motion requesting that the district judge recuse himself from further participation in the case. Because Dixon had already filed his notice of appeal, and because the district court had disposed of all of the parties' pending motions, the court concluded that it "presently lacks jurisdiction over this matter." Dixon timely appeals each of these rulings against him.

## II. ANALYSIS

### A. Standard of review

A district court's dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed de novo. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). All well-pled allegations of the complaint are taken as true. *See id.* at 514-15. "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). In sum, we must conduct essentially the same analysis as the district court in that we "take the plaintiff's factual allegations as true and if it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claims that would entitle [him] to relief, then . . . dismissal is proper." *Id.* (quotation marks omitted).

A district court's imposition of sanctions on an attorney pursuant to 28 U.S.C. § 1927, in contrast, is reviewed under the more deferential abuse-of-discretion standard. *See Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 726 (6th Cir. 2004). The same standard applies to the review of a district court's denial of a motion for recusal or disqualification pursuant to 28 U.S.C. § 455(a). *In re Triple S Rests., Inc.*, 422 F.3d 405, 417 (6th Cir. 2005).

### B. Statute-of-limitations defense

The district court dismissed Dixon's case against each of the defendants on the ground that his claims had been filed outside the governing statute of limitations. Dixon does not dispute that the statute of limitations on a § 1983 claim, as determined by Kentucky law, is one year. *See* KRS § 413.140(1)(a); *see also Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) (determining that "[s]ection 1983 actions in Kentucky are limited by the one-year statute of limitations found in § 413.140(1)(a)"). Nor does he dispute that federal law governs the separate question of when the relevant limitations period begins to run. *See Collard*, 896 F.2d at 183 (citing *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)).

This court follows the "discovery rule," which provides that "the statute of limitation begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Collard*, 896 F.2d at 183 (citing *Sevier*, 742 F.2d at 273). The following analysis reflects the fact that the defendants in the present case played different roles in the relevant events and at different times.

### 1.        *Dismissal of Clem, Lawson, and Saylor*

Clem and Lawson were involved with this case from the beginning.  Lawson was counsel for Grace Ann Tolliver (then-Superintendent of the Harlan County School System) at the first tribunal hearing and introduced the photographs that had been developed from negatives over which Clem, the principal of Cumberland High School, had maintained custody.  Saylor became Superintendent of the Harlan County School System in 2000, still roughly five years before Dixon filed his federal complaint, and oversaw the school board's ongoing Dixon-related litigation in the state and administrative tribunals.  Dixon does not dispute these facts, except to insist that somewhere along this chain of custody, the photographs were altered to show more nipple than actually existed in the pictures that Dixon took of S.C.  He also conceded in his original § 1983 complaint that his suspicion of forgery—which was the cause of his alleged injury—stemmed from when "he first viewed [the photographs] *in 1996*."  (Emphasis added.)  As Lawson notes, "Dixon's suspicion and act of requesting enlarged copies of the photographs from [her] is tantamount to an admission that his claims accrued in 1996."

But Dixon contends that, for the purposes of determining when the statute of limitations on his claims began to run, the violation of his due process rights should be understood as ongoing or "continuing" through the time of his second tribunal hearing in September of 2005.  This latter hearing, after all, was characterized by Dixon as an "historical docudrama" in which the only admissible evidence was the photographs and transcripts from the first hearing.

Dixon invokes three related legal doctrines to support his theory of tolling:  the tort-based continuing-violation doctrine, the common-law rule of continuous representation, and the obstruction-of-prosecution doctrine codified in Kentucky law under KRS § 413.190(2).  The district court correctly concluded that none of these doctrines applies to the present case and, to avoid unnecessary duplication, we hereby adopt the court's reasoning in full on this issue of tolling.

We nonetheless pause to emphasize that a single basic point reveals the meritlessness of Dixon's theory.  In short, "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation."  *Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999); *see also Vandiver v. Harding County Bd. of Educ.*, 925 F.2d 927, 930 (6th Cir. 1991) (upholding a statute-of-limitations-based dismissal in a § 1983 case because "adherence to a discrete decision regarding [] academic standing . . . does not suffice to state a claim for [a] continuing violation").

Dixon's allegation in his amended complaint that the defendants "perpetrate[d] essentially the same fraud on the second tribunal [in 2005] that was perpetrated on the first [in 1996]" is thus precisely why the continuing-violation doctrine and related theories are inapplicable to his case.  As the district court put it:

> All of the injuries allegedly suffered by Dixon occurred as a result of the manufacture of the allegedly fraudulent photographs, and their subsequent use in [the] first termination hearing in August of 1996.  It was at this point that Dixon was terminated.  Everything that has followed was a result of his firing at the first hearing.

*Dixon*, 404 F. Supp. 2d at 965.  Dixon's claims against Clem, Lawson, and Saylor—none of whom, incidentally, even attended the second hearing—were therefore properly dismissed by the district court on the ground that they were barred by the governing one-year statute of limitations.  We accordingly need not address Dixon's continuous-representation argument, which he raised solely to counter Lawson's defense that her tenure as counsel for the school officially ended in 1998.  His obstruction-of-prosecution argument is also meritless because his allegations that Clem, Lawson, and Saylor conspired to conceal the fraudulent photographs from him are just that—allegations that

find no support whatsoever in the record.  In fact, as discussed above, his concession in his original § 1983 complaint that he had "viewed [the photographs] in 1996" directly contradicts his obstruction-of-prosecution argument.

### 2.          *Dismissal of Head*

We must still decide whether the statute-of-limitations justification properly applies to Head. Head's first contact with Dixon occurred in September of 2005, when Head presided over the second tribunal hearing following the remand from the Harlan County Circuit Court.  Dixon filed his amended complaint in the district court less than a month later.  The case against Head was therefore timely, and the district court erred in concluding otherwise.  Head concedes as much in his brief, acknowledging that he "did not assert a statute of limitation defense" in the court below and noting that "Dixon is correct in arguing that Mr. Head's actions took place within one year of when he filed his amended complaint."

But this error in the district court's basis for dismissing Head does not mandate reversal.  The dismissal of Dixon's claims against Head is still proper on the alternative ground that Head was immune from liability in his capacity as a hearing officer.  Specifically, Head argues that three separate forms of immunity shield him from liability:  "quasi-judicial immunity from suit, his qualified immunity from suit, and . . . the sovereign immunity and Eleventh Amendment bar to bringing a damage action against a state official sued in his official capacity."

Head properly notes as an initial matter that we "may affirm on any grounds supported by the record even if different from the reasons of the district court." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002).  Although the immunity issue was not resolved by the district court, which dismissed Dixon's claims against all of the defendants solely on statute-of-limitations grounds, the issue was raised below in the form of Head's memorandum filed as part of his motion to dismiss.  To be sure, Dixon's attorney suggested at oral argument that we could require supplemental briefing from the parties on the issue of Head's immunity.  But we decline to do so given that the application of the various immunity doctrines invoked by Head is not subject to reasonable dispute, as explained below.

Regarding Dixon's claims against Head in his official capacity, Dixon was essentially suing the Commonwealth of Kentucky because, during the events in question, Head was serving as a hearing officer for the Kentucky Attorney General's Office, which is an alter ego or arm of the Commonwealth.  *See Mitchell v. Chapman*, 343 F.3d 811, 822 (6th Cir. 2003) ("[A] suit against a public employee in his or her official capacity is a suit against the agency itself.").  The doctrine of sovereign immunity categorically prohibits such suits against a state by one of its own citizens, as this court reconfirmed most recently in *S.J. v. Hamilton County, Ohio*, 374 F.3d 416, 419 (6th Cir. 2004):

> The text of the Eleventh Amendment explicitly refers to the immunity of the states from suits "commenced or prosecuted . . . by Citizens of another State." U.S. Const. amend. XI.  However, the Supreme Court has made clear that the sovereign immunity of the states "neither derives from nor is limited by the terms of the Eleventh Amendment," *Alden v. Maine*, 527 U.S. 706, 713 (1999), and that it extends to actions brought against a state by its own citizens, *Hans v. Louisiana*, 134 U.S. 1, 15 (1890).  Sovereign immunity applies not only to the states themselves, but also to "state instrumentalities," *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997), or, in other words, to those government entities that act as "arm[s] of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).

Regarding Dixon's claims against Head in his individual capacity, Head correctly argues that "[e]ven though Kentucky's sovereign immunity does not preclude suits against state officials in their

individual capacities for damages under § 1983, [the] common-law doctrine[] of judicial immunity . . . still appl[ies] to protect the judicial function." "Judicial immunity" is shorthand for the doctrine of absolute immunity that operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities. *DePiero v. City of Macedonia*, 180 F.3d 770, 783 (6th Cir. 1999) ("Judges are generally absolutely immune from civil suits for money damages, including § 1983 suits."); *Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988) (per curiam) (noting that statutorily empowered hearing officers are entitled to absolute judicial immunity under the standard set forth in *Butz v. Economou*, 438 U.S. 478 (1978)). "This far-reaching protection is justified by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *DePiero*, 180 F.3d at 783 (quotation marks omitted).

In *DePiero*, this court set forth the following framework for evaluating claims of judicial immunity:

> [A]bsolute judicial immunity is overcome only in two situations. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.
>
> Whether an action is judicial depends on the nature and function of the act, not the act itself. This functional analysis typically turns on two factors set forth by the Supreme Court in *Stump v. Sparkman*[, 435 U.S. 349, 362 (1978)]. First, looking to the nature of the act, courts must determine whether it is a function normally performed by a judge. . . . Second, looking to the expectations of the parties, courts must assess whether the parties dealt with the judge in his or her judicial capacity.

*DePiero*, 180 F.3d at 784 (citations and quotation marks omitted).

Neither of the two exceptions to judicial immunity apply in the present case. Starting with the second exception, Head as the tribunal's hearing officer clearly possessed jurisdiction over the limited issue on remand of whether termination of employment was too severe a sanction to impose on Dixon. *See, e.g.*, *Fankhauser v. Cobb*, 163 S.W.3d 389, 393 (Ky. 2005) (extending "the tribunal['s] . . . ultimate control over the termination of a teacher's contract" to include "the power to impose lesser sanctions in lieu of termination"). Dixon does not suggest otherwise.

Regarding the first exception, Head's role as the hearing officer was clearly "taken in [his] judicial capacity." *See DePiero*, 180 F.3d at 784. Dixon complains that Head's interpretation of the remand mandate as barring the introduction of new evidence perpetuated the "malfeasance" initiated by the other defendants at the first tribunal hearing in 1996. But whether Head properly construed the remand mandate is beside the point. All that matters is that he in fact did so, because construing remand orders is certainly "a function normally performed by a judge." *See id.*

Dixon fails to meaningfully dispute the legal bases of Head's immunity defenses in his reply brief. He simply argues that, "[a]lthough Appellee Head may eventually be able to assert some sort of immunity, such contentions are not properly before the Court of Appeals at the present time." But this argument is incorrect for the reasons set out in *Abercrombie & Fitch*, 280 F.3d at 629, as noted above. In sum, the dismissal of Head on statute-of-limitations grounds was improper, but affirmance is nonetheless appropriate in light of his legally meritorious immunity claim.

### 3.    *Harmless error*

The district court concluded its opinion with what is best described as an alternative harmless-error determination. Specifically, the court noted that

even if the allegedly forged and/or altered photographs were excluded [from the tribunal hearings], Dixon has confessed to taking photos of a 17 year old student of his who was not wearing any clothing above the waist. Neither has Dixon alleged that former Superintendent Tolliver was exposed to the allegedly forged and/or altered photographs, and it was her determination of conduct unbecoming which the tribunal was meeting to address.

*Dixon*, 404 F. Supp. 2d at 968 (footnote omitted).

Indeed, despite the number of briefs filed by the parties (five) and the multitude of issues raised by Dixon, this is legally an easy case. Almost all of Dixon's arguments, as the district court made clear, revolve around his core contention that the photographs used to justify his firing were faked. He therefore expects that our decision will, among other things, answer the question of "whether in this Circuit the United States continues to join the ranks of civilized nations that erect a firewall against having their legal institutions deliberately use faked evidence to frame people in trials or hearing."

As each of the defendants properly insist, however, Dixon's characterization of the case is not only directly contradicted by the record, but irrelevant. First, the administrative tribunal explicitly and unanimously found after the second and final hearing that "all the exhibit photos are legitimate, and the Tribunal does not believe any of the exhibit photos were altered or manipulated in any way." Whether, as Lawson suggests, res judicata applies to this state-court factual finding or not, the fact remains that Dixon's contention that the relevant photographs were faked finds no support anywhere in the record beyond his experts' repeatedly rejected reports.

Second, and even more critical, Dixon admitted on several occasions that S.C. was not wearing any clothing above the waist in at least several of the pictures that he took of her. His attorney at the first hearing explicitly reconfirmed this admission, stating that "I don't think anyone's going to disagree with" the fact that "Mr. Dixon has admitted here in his testimony today and yesterday . . . that there were several pictures taken of [S.C.] in which she was not wearing any clothing from the waist up."

Dixon continues to qualify his admission, however, by insisting that the relevant pictures were not "indecent" because S.C.'s nipples were never exposed to the camera, but instead remained covered by either her hair or a fishnet. But he has never retracted his key concession that she wore no actual clothing above her waist during part of the photo shoot at his studio. This concession, as accurately characterized by Lawson, was "self-defeating" regardless of the photographs' decency. We agree with Lawson's argument that, "[e]ven if the Court accepts Dixon's allegation that the photographs introduced expose more breast than the photographs he remembers taking, the amount of exposed breast had no bearing on the Tribunal's decision that Dixon's termination was appropriate pursuant to KRS 161.790(1)(b) [for conduct unbecoming a teacher]."

The tribunal indeed made clear that the lone rationale for its "guilty" finding was that "Mr. Dixon admitted he took pictures of [S.C.], a student of his, with no clothes on above her waist." Accordingly, even if we were to assume that Dixon's version of the facts are true, "it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claims that would entitle [him] to relief." *See Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). Dismissal of his claims pursuant to Rule 12(b)(6) was therefore proper for reasons beyond the statute-of-limitations justification cited by the district court. This conclusion is not "rough justice," as Dixon insists, but instead a fairly straightforward application of federal law.

**C.       Sanctions against Dixon's attorney**

Following the dismissal of Dixon's claims against them, the defendants filed a motion for attorney fees pursuant to 42 U.S.C. § 1988.  They argued that, as the prevailing parties in Dixon's § 1983 action, they were entitled to such fees.  *See* 42 U.S.C. § 1988(b) (providing that, in a civil-rights action, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs").

The district court denied the defendants' motion, concluding that Dixon's claims, although "extremely close to the line," were not frivolous.  *Dixon*, 2006 WL 751235, at *1; *see also id.* (noting that "[b]efore a defendant may recover attorney's fees under 42 U.S.C. § 1988, the plaintiff's claim must have been 'frivolous, unreasonable, or groundless,' or 'the plaintiff continued to litigate after it clearly became so'" (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978))).

But the district court did not leave the defendants entirely without a remedy.  Instead, it sua sponte imposed sanctions directly on Blum as Dixon's attorney pursuant to 28 U.S.C. § 1927, which provides that

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court *to satisfy personally* the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

(Emphasis added.)

The district court set forth a laundry list of "improper conduct by the Plaintiff's counsel," which included

> the pressing of specious legal claims and filings in this case which either contained inappropriate language, claims and assertions (requiring unnecessary responses) or which were inappropriate *en toto*.  Indeed, despite being warned by the Court that his actions were improper, Mr. Blum continued to make personal attacks.  Additionally, he continued to instruct opposing counsel and the Court as to the "proper procedures" that each should follow.

*Dixon*, 2006 WL 751235, at *2.  Some of Blum's arguments were inappropriate, moreover, because they were "directly contradictory to the explicit language of the [Kentucky] state court of appeals." *Id.* at *4.  The district court said that although it "is reluctant to hold Dixon responsible [for] the conduct set out above, it has no reluctance toward holding Mr. Blum responsible." *Id.*  It concluded that the "total effect" of Blum's misconduct was "to cause needless delay to the Court and unnecessary expense to the Defendants." *Id.*  The sanctions imposed totaled $6,938.00.

As an initial matter, the district court's invocation of § 1927 as opposed to § 1988 (which would have shifted the financial responsibility for Blum's vexatiousness to Dixon) raises a jurisdictional issue involving Blum's standing to challenge this ruling on appeal.  Specifically, do we have jurisdiction over the district court's imposition of sanctions on Blum even though Dixon, as indicated on the notice of appeal, is the lone appellant and Blum is therefore arguing his case through his client?  Head poses precisely this question in his brief, noting that "[i]t is not clear that Dixon has standing to appeal a sanction imposed only against his attorney . . . ."

Precedent from this circuit, as well as prudential considerations, militate in favor of our exercising jurisdiction over Blum's appeal. Rule 3(c) of the Federal Rules of Appellate Procedure provides in pertinent part that

> [t]he notice of appeal must specify the party or parties taking the appeal by naming each one in the caption or body of the notice, but an attorney representing more than one party may describe those parties with such terms as "all plaintiffs" . . . ; designate the judgment, order, or part thereof being appealed; and name the court to which the appeal is taken. . . . *An appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice.*

(Emphasis added; subheadings omitted.)

The italicized language reflects a 1993 amendment to the rule that was designed to "liberalize" its previously rigid enforcement. *See Maerki v. Wilson*, 128 F.3d 1005, 1007 (6th Cir. 1997) (discussing Rule 3(c) in the context of a sanctions award against attorneys, and concluding that "[a]lthough we continue to believe that compliance with the letter of Rule 3(c) is required, what constitutes compliance with the rule has clearly been liberalized") (quotation marks omitted). "Pursuant to the amended rule, then, this court should not dismiss the appeal of a party whose intent to appeal is made 'objectively clear' by the notice of appeal." *Id.*

In the present case, Blum's name appears only on the signature line of the three "Amended Notices of Appeal" filed by Dixon, but not in either their captions or their bodies as required by Rule 3(c). This is comparable to the situation in *Maerki*. *See id.* at 1007. Unlike in *Maerki*, however, Blum's intent to appeal the imposition of the sanctions against him "as a party rather than as a party's attorney" is objectively clear from Dixon's second notice of appeal. *See id.* at 1008. That notice explicitly designates "the District Court's orders relating to sanctions under 28 U.S.C. § 1927" as an "additional order[] being appealed."

To be sure, the notice of appeal in *Maerki* had similarly identified the proper sanctions-imposing order being appealed. But the order in that case had imposed sanctions against *both* the plaintiff and his attorney, thereby rendering the scope of the notice unclear. *Maerki*, 128 F.3d at 1007. This ambiguity was the principal reason that this court in *Maerki* declined jurisdiction over the attorney's, but not his client's, appeal. *See id.* at 1007-08 ("Because it is possible that only one party will appeal a judgment entered against multiple parties, and because the notice of appeal in this case clearly indicated [the plaintiff's] intent to appeal, it cannot be said that the notice's reference to the . . . judgment provided objectively clear notice of [the plaintiff's attorney's] intent to appeal.").

The *Maerki* court thus narrowed its anti-jurisdiction ruling to the unique facts of that case, explicitly distinguishing the contrary ruling in *Street v. City of Dearborn Heights*, No. 93-1374, 1994 WL 615672, at \*5 (6th Cir. Nov. 4, 1994), where, as here, "the order appealed from concern[ed] [Rule 11] sanctions imposed *only* on plaintiff's attorney and not on plaintiff himself." (Emphasis added.) *Maerki* therefore supports the conclusion that Blum complied with the liberal pleading requirements of Rule 3(c) and that jurisdiction over his appeal of the district court's imposition of sanctions is proper.

As noted above, prudential considerations further support this conclusion. Declining jurisdiction would inevitably result in Blum's attempting to refile the appeal under his own name, even though the deadline for doing so has already long since passed. The defendants would then presumably move to dismiss the appeal for untimeliness, and we, in turn, would have to rule on the motion. This likely sequence of events would be a waste of judicial resources. It would also be unnecessary in light of the weakness of Blum's arguments.

Simply put, the record in this case fully supports the district court's decision to impose sanctions on Blum. The briefing in the present appeal hints at why. In response to Head's qualified-immunity argument, Blum states as follows:

> Appellee Head's attempt to claim quasi-judicial immunity is likewise devoid of supporting materials. All he has established so far is that he called the historical docudrama exercise "a hearing," generated a "final order" after it, and that it was conducted indoors. This is insufficient. If a judge or hearing officer calls a plaintiff into his chambers saying, "your trial is about to begin" and then rapes her and states that she has "prevailed," the fact that he calls it "a trial" will hardly allow him to invoke quasi-judicial immunity. The historical docudrama exercise in this case occupies a position about halfway between a bona fide tribunal hearing and a rape.

If this is the type of language that Blum believes will persuade us to reverse a ruling against both him and his client, we can understand why his conduct before the district court got him into trouble in the first place. Nor are we surprised to discover that other courts have been displeased with his conduct in the past. He has been reprimanded and/or sanctioned on at least three separate occasions by three separate federal courts, including this one. *See New York v. Green*, No. 01-CV-196A, 2004 WL 1375555, at *6 (W.D.N.Y. June 18, 2004) ("Blum's complete and unexplained disregard of his obligation to answer the complaint and his insincere overtures toward settlement support the conclusion that his decision to default was strategic, deliberate and willful."); *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (affirming the district court's imposition of § 1927 sanctions against Blum because "Blum's conduct during discovery unnecessarily multiplied the proceedings, and fell short of his obligations as a member of the bar"); *Blum v. Schlegel*, No. 96-7705, 1997 WL 138741, at *1-2 (2d Cir. Mar. 21, 1997) (affirming the district court's dismissal of Blum's own lawsuit as a sanction for his having willfully violated "the clear and unambiguous provisions" of the court's protective order).

We would be wrong, of course, to presume that Blum misbehaved in this case simply because he has misbehaved in previous cases. Such a presumption would violate the principles that underlie the innocent-until-proven-guilty maxim in criminal cases as well as the general prohibition against the admission of propensity evidence in federal cases. *See* Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

But where, as here, we must resolve the less-probing question of whether the district court abused its discretion in concluding that Blum had misbehaved, Blum's prior conduct is telling. *Cf. id.* (noting that, as an exception to the general rule, evidence of past wrongdoing may be admissible, among other reasons, to prove the "absence of mistake or accident"). This was, moreover, "a lengthy and complex case with which the district court was closely familiar." *See Bridgeport Music, Inc. v. London Music, U.K.*, Nos. 05-5045-5058, 2007 WL 930409, at *7 (6th Cir. Mar. 28, 2007) (concluding that, in a "lengthy and complex" case where the "court employs the proper legal standard and specifically and thoroughly states the reasons for its decision, that decision is entitled to considerable deference").

Finally, Dixon's allegations that the district court's decision to impose sanctions on Blum was motivated by "dislike," an "out-of-control hostility," or a "bristling anger" find no support in the record. The court did not hastily reach the conclusion that Blum's actions were sanctionable. It instead engaged in a lengthy and meticulous legal analysis that explicitly stopped short of concluding that Blum's actions had been undertaken in bad faith. To be sure, a finding of bad faith is not a necessary precondition under Sixth Circuit caselaw to a determination of § 1927 sanctionability. *See Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986) ("[W]e hold that 28 U.S.C. § 1927 authorizes a court to assess fees against an attorney for 'unreasonable and

vexatious' multiplication of litigation despite the absence of any conscious impropriety."). But if the district judge in the present case had truly harbored the type of ill will toward Blum that Dixon insists he had, he almost certainly would have made a finding of bad faith and imposed sanctions on that ground alone.

We therefore affirm the district court's decision to impose sanctions on Blum. In addition, we cannot emphasize enough that Blum needs to learn his lesson at some point: His behavior, whether motivated by bad faith or not, not only reflects poorly on himself and his profession, but, far more importantly, is of no benefit to his clients.

## D.      Dixon's motion to recuse

As his final issue on appeal, Dixon contends that the district court erred in denying as moot his motion for recusal or disqualification. Specifically, the court concluded that, "because all issues properly raised in this Court have been decided and a Notice of Appeal had been filed, the Court presently lacks jurisdiction over this matter."

This court has stated that, "[a]s a general rule, the district court loses jurisdiction over an action once a party files a notice of appeal, and jurisdiction transfers to the appellate court." *Lewis v. Alexander*, 987 F.2d 392, 394 (6th Cir. 1993). But where, as here, the district court affirmatively opts to maintain jurisdiction even after the filing of the notice of appeal for the purpose of resolving still-pending motions, its jurisdiction expires following the resolution of the last motion. *See* Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A) [e.g., a Rule 59(e) motion to reconsider judgment]—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."). Because the district court explicitly and accurately applied these principles to reach its lack-of-jurisdiction determination, we find no abuse of discretion in its denying Dixon's recusal motion as moot.

Dixon's motion lacked merit in any event for the simple reason that, as discussed in Part II.C. above, the district judge was not shown to possess any "bias or prejudice" against Blum. *See* 28 U.S.C. § 455(b)(1) (noting that a judge "shall disqualify himself . . . where he has a personal bias or prejudice concerning a party"); *In re Triple S Rests., Inc.*, 422 F.3d 405, 417 (6th Cir. 2005) (clarifying that, in the context of § 455, "the words bias and prejudice connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved . . . or because it is excessive in degree") (brackets omitted; emphasis in original).

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.